UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RAMON VELAZQUEZ,<br><br>                    Plaintiff,<br><br>v.<br><br>MIDLAND FUNDING, LLC, a<br>Delaware limited liability company,<br><br>                    Defendant. | Case No. 1:18-cv-00043-CWD<br><br>**MEMORANDUM DECISION AND<br>ORDER<br>RE: DKT. 17, 24, 33** |

## INTRODUCTION

Before the Court are Plaintiff's motion to amend the complaint, Defendant's

motion to stay this matter and to compel arbitration, and Defendant's motion for

protective order. (Dkt. 17, 24, 33.) The parties filed responsive briefing, and the Court

conducted a hearing on October 17, 2018, during which the parties appeared and

presented their arguments. Thereafter, the Court provided an opportunity for Defendant

to supplement the record.[1] For the reasons that follow, the Court will grant Plaintiff's motion to amend, deny Defendant's motion to stay and compel arbitration, and deny Defendant's motion for protective order.

## FACTUAL BACKGROUND[2]

Plaintiff claims that Midland Credit Management, Inc., which acted at the direction of or under the control of Defendant, filed a collection action against Plaintiff in Canyon County, Idaho, on May 16, 2017. The state court complaint alleged Defendant owned a debt incurred by Plaintiff with Citibank, N.A., and alleged Plaintiff owed Defendant the sum of $1,074.80. During discovery in this matter, Plaintiff learned Citibank originally owned the debt, and had charged off Plaintiff's account in the amount of $1,074.80 prior to selling the debt now owned by Defendant. The parties negotiated a settlement of the state court collection action, with Plaintiff paying Defendant 50% of the alleged debt, in the amount of $537.40. Defendant then dismissed the collection action with prejudice.

After the collection action was dismissed, Plaintiff asserts that Citibank informed him he had a credit on his account for debt protection fees and related finance charges previously billed in error, in the amount of $88.11. Plaintiff alleges that Midland Credit knew or should have known of Citibank's error when it filed the collection action, yet it

---

[1] Defendant did so, which prompted a motion to strike. The Court reviewed the supplemental materials and granted the motion to strike. (*See* Dkt. 40, 42, 44, and 47.)

[2] The facts are taken from the Amended Complaint and proposed second amended complaint, and are taken as true only for purposes of the pending motions.

continued its efforts to recover the entire sum of $1,074.80 inclusive of the erroneously billed $88.11. Plaintiff contends that Midland Credit knew or should have known that the $1,074.80 incorrectly included the $88.11 because, in July of 2015, Citibank entered into a Consent Order with the Consumer Financial Protection Bureau in which Citibank admitted to overcharging consumers and agreed as part of the order to credit these amounts. Plaintiff asserts that Midland Credit and Defendant would have known about these forgiven amounts as part of the asset purchase agreement it entered into with Citibank, which occurred in 2016, after entry of the Consent Order in July of 2015.

Plaintiff further alleges that, despite his settlement agreement with Defendant for him to pay the amount of $537.40 exclusive of attorney fees and costs, Defendant issued a 1099-C to the Internal Revenue Service for $758.40, causing Plaintiff to pay income tax on an inflated debt forgiveness amount of $758.40. Plaintiff alleges that the difference between the settlement amount and the amount reported on the 1099-C constitutes Midland Funding's court filing fees and process server fees, which were included wrongfully in the total amount reported according to the terms of the parties' settlement agreement.

## DISCUSSION

Plaintiff's complaint against Defendant Midland Funding LLC included one count for misrepresentation under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.*, and one count for abuse of process. Prior to Defendant filing an answer to the complaint, Plaintiff filed an amended complaint on February 12, 2018. (Dkt. 4.) The

amended complaint contains three counts of misrepresentation asserted against Defendant pursuant to the FDCPA, and one count for abuse of process.

Defendant filed its answer on March 6, 2018, and the Court conducted a scheduling conference with the parties on April 12, 2018. Pursuant to the Court's case management order, the deadline to file a motion to join parties and amend pleadings was July 2, 2018.[3] (Dkt. 14.) Plaintiff filed a motion to amend the first amended complaint on June 29, 2018. (Dkt. 17.) The proposed second amended complaint does not materially alter the general allegations asserted against Defendant as set forth in the first amended complaint.

The proposed second amended complaint requests the following three substantive changes: 1) adding Midland Credit Management, Inc., as a defendant; 2) proposing this case be converted from a claim on behalf of an individual into a class action on behalf of two proposed classes; and 3) deleting one of the three causes of action for misrepresentation asserted under the Fair Debt Collection Practices Act.[4] Defendant does not oppose the addition of Midland Credit Management, Inc., as a defendant, or the deletion of one of the three causes of action under the FDCPA, and concedes amendment is proper under Fed. Rule Civ. P. 15. However, Defendant argues the proposed amendment to convert this matter to a class action is made in bad faith and would be both

---

[3] This deadline excludes the filing of a motion to add a claim for punitive damages.

[4] The two counts asserting violation of the FDCPA allege misrepresentation on the grounds that Defendants sought payment of $1,074.80 that included an overcharge of $88.11 by Citibank, and later overstated the amount of debt forgiven by including $221 in collection costs. The count asserting abuse of process alleges Defendant Midland Funding willfully misrepresented the amount of debt owed.

prejudicial and futile. Accordingly, Defendant asserts that, regardless of the propriety of the other two proposed amendments, the motion should be denied because the request to add class claims is improper under Rule 15.

Additionally, Defendant filed a motion to compel arbitration.[5] In opposition to Defendant's motion to compel arbitration, Plaintiff asserts that Defendant has not established the parties had a valid, existing agreement to arbitrate; and, even if valid, Plaintiff claims Defendant waived its right to enforce arbitration by pursuing litigation in state court and waiting to assert its right to compel arbitration until late in this action. According to Plaintiff, Defendant is precluded from enforcing the arbitration provision of the card agreement even if it is deemed valid by the Court.

Also related to the two motions is Defendant's motion for a protective order. In support of its motion to compel arbitration, Defendant produced a copy of what it claims is the governing card agreement containing the arbitration clause, but Defendant did not provide a copy of the asset purchase agreement whereby Defendant claims it acquired from Citibank the right to enforce the underlying card agreement. Rather than provide the same in response to Plaintiff's request for production, Defendant filed a motion for protective order.

During the hearing, however, the Court noted that the terms of the asset purchase agreement transferring Citibank's accounts and receivables to Defendant, which accounts

---

[5] The arbitration provision contains a clause indicating that claims brought as part of a class action can be arbitrated only on an individual basis.

and receivables purportedly included Plaintiff's account, appeared integral to deciding the motion to compel arbitration. The Court provided Defendant the option of filing the agreement under seal with the Court. If not filed, the Court indicated a ruling on the motion to compel arbitration would be made based on the record to date. Defendant elected to file the Purchase and Sale Agreement under seal, together with a related Assignment and Release attached to Ms. Taylor's declaration as Exhibit B. (Dkt. 41, 42, 47.) Accordingly, the motion for protective order (Dkt. 33) will be denied in its entirety.[6]

Below, the Court will analyze the motion to amend first, followed by the motion to stay and compel arbitration.

## 1.    Motion to Amend Complaint

### A.    *Rule 15 Standard*

Federal Rule of Civil Procedure 15(a) provides that, once a responsive pleading has been served, a party may amend its pleading "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court of Appeals for the Ninth Circuit recognizes that "the underlying purpose of Rule 15 [is] to facilitate [a] decision on the merits, rather than on the pleadings or technicalities," and, therefore, "Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality." *Chudacoff v. University Med.*

---

[6] The motion for protective order sought an order staying all discovery pending a decision on Defendant's motion to stay and compel arbitration and preventing production of the asset purchase agreement.

*Cent. of Southern Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)).

The decision whether to grant or deny a motion to amend under Rule 15(a) rests in the sole discretion of the trial court. The factors that are commonly used to determine the propriety of a motion for leave to amend are: 1) undue delay, bad faith or dilatory motive on the part of the movant; 2) repeated failure to cure deficiencies by amendments previously allowed; 3) undue prejudice to the opposing party by virtue of allowance of the amendment; and 4) futility of amendment. *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 985 n. 5 (9th Cir. 2011) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

However, "[t]hese factors . . . are not of equal weight in that delay, by itself, is insufficient to justify denial of leave to amend." *Webb*, 655 F.2d at 979 ("The mere fact that an amendment is offered late in the case is . . . not enough to bar it."); *Bowles v. Beade*, 198 F.3d 752, 758 (9th Cir. 1999). "Only where prejudice is shown or the movant acts in bad faith are courts protecting the judicial system or other litigants when they deny leave to amend a pleading." *Webb*, 655 F.2d at 980 (citation omitted). The Ninth Circuit has held that, although all these factors are relevant to consider when ruling on a motion for leave to amend, the "crucial factor is the resulting prejudice to the opposing party." *Howey v. United States*, 481 F.2d 1187, 1189 (9th Cir. 1973). Prejudice is the touchstone of the inquiry under Rule 15(a). *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Ultimately, "[u]nless undue prejudice to the opposing

party will result, a trial judge should ordinarily permit a party to amend its complaint."
*Howey*, 481 F.2d at 1190.

**B.** **Analysis**

**(1)** **Undue Delay, Bad Faith, or Dilatory Motive**

Defendant contends Plaintiff's representation that the class claims were not known until certain discovery was conducted in this case is not true, as the class claims should have been well known due to the public nature of the Citibank consent order, and the fact that nothing was learned during Defendant's deposition that was not already apparent from that consent order. Accordingly, Defendant asserts that, because the factual basis for the class claims should have been known, the filing of the proposed amended complaint on the eve of the deadline is in bad faith or was pursued with undue delay.

When faced with a similar argument in *Willnerd v. Sybase, Inc.*, the Court noted that Rule 15(a) is "very liberal," and "all inferences [are] in favor of granting the motion." *Willnerd*, No. CV 09–500–S–BLW, 2010 WL 2643316 at *1 (D. Idaho June 29, 2010) (citing *William O. Gilley Enterprises, Inc. v. Atlantic Richfield Co.*, 588 F.3d 659, 669 n.8 (9th Cir. 2009) (citation omitted)). The Court explained that, for the factors of bad faith, undue delay, or unfair prejudice, it "need only look to the agreed Case Management Order entered following a telephone scheduling conference attended by both parties." *Willnerd*, 2010 WL 2643316, at *1. Because the plaintiff had filed the

motion to amend by the agreed upon deadline,[7] the Court found neither bad faith, unfair prejudice, or undue delay. *Id.*

The Court finds the same here. Plaintiff filed the motion to amend prior to the agreed upon deadline for doing so. Under the circumstances, and under *Willnerd*, the Court finds neither bad faith nor undue delay.

Defendant's reliance upon *Fidelity Fin. Corp. v. Fed. Home Loan Bank of San Francisco*, 792 F.2d 1432, 1438 (9th Cir. 1986), for the proposition that the motion should be denied when the factual bases of the claims were known prior to previous amendments, is misplaced. There, the plaintiff sought leave to file a fourth amended complaint after the court had announced its decision to grant summary judgment for the defendant. The court denied the motion to amend, finding that the new claims merely restated earlier claims and that permitting amendment would be prejudicial. 792 F.2d at 1438. Upon review, the Court of Appeals for the Ninth Circuit agreed, finding that the plaintiff was merely "restating its prior claims under new labels" when the factual bases of the claims were known to the plaintiff long before. *Id.* Further, given the posture of the case, the court found also that the defendant would be prejudiced if the motion to amend was granted. *Id.*

Such is not the case here. First, the posture of this case is quite different than in *Fidelity*, because dispositive motions have not been filed, and Plaintiff filed the motion to amend prior to the agreed upon and Court imposed deadline. And second, Defendant's

---

[7] The deadline in *Willnerd* was April 26, 2010. The motion to amend was filed that same date.

argument that the factual bases of the claims based upon the consent order cuts both ways---the consent order and its terms would have been equally available to Midland Credit and Defendant, and the complaint alleges also that Defendant should have known of the amounts Citibank forgave under the terms of the asset purchase agreement.[8] Last, it appears disingenuous for Defendant to argue that the proposed addition of Midland Credit as a defendant is not undertaken in bad faith or with undue delay, yet the class claims are.

### (2)    *Futility*

Defendant next argues Plaintiff's proposed amendment to assert class claims is futile. Plaintiff's proposed second amended complaint defines two classes as follows:

> The First Class consists of (a) all individuals in Idaho (b) to whom Midland Funding or Midland Credit (c) filed a complaint against (d) which included an amount sought which included amounts Citibank overcharged the individual (e) which complaint was filed within the one (1) year period immediately preceding the filing of this complaint.

> The Second Class consists of (a) all individuals in Idaho (b) to whom Midland Funding or Midland Credit (c) issued a 1099-C to (d) which included amounts for court costs and service fees which were not allowed by contract or statute (e) which 1099-C was mailed to the consumer within the one (1) year period immediately preceding the filing of this complaint.

---

[8] Defendant entered into the asset purchase agreement with Citibank in 2016, after the July 2015 Consent Order was entered between Citibank and the Consumer Finance Protection Bureau.

Defendant raises two objections. First, Defendant contends the allegations related to the classes proposed by Plaintiff do not provide sufficient information suggesting that a class actually exists. Second, Defendant asserts the definitions of the two classes impermissibly require a determination of the merits prior to ensuring the existence of a class. Defendant explains that, because the classes are defined as either individuals whom Defendant or Midland Credit "impermissibly" sued for amounts charged off by Citibank, or to whom Defendant or Midland Credit mailed 1099-C's that included costs and service fees not allowed by contract or statute, the class definitions erroneously require a finding of liability. Plaintiff argues that the facts concerning the individuals comprising the two classes have been adequately pled, and any deficiencies concerning the class descriptions can be remediated at the time class certification is sought.

An amendment is considered futile if "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Arbon Valley Solar LLC v. Thomas & Betts Corp.*, No. 4:16-CV-00070-DCN, 2017 WL 5613009, at *3 (D. Idaho Nov. 21, 2017) (quoting *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017), in turn quoting *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)). "When a motion to amend is opposed on the grounds that amendment would be futile, the standard of review in considering the motion is akin to that undertaken by a court in determining the sufficiency of a complaint which is challenged for failure to state a claim under the Federal Rules of Civil Procedure, Rule 12(b)(6)." *Doe v. Nevada*, 356 F. Supp. 2d 1123, 1125 (D. Nev. 2004). "A Rule 12(b)(6)

dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted).

A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must also contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id*. at 570. Finally, in considering a Rule 12(b)(6) motion, the Court must view the "complaint in the light most favorable to" the claimant and "accept[ ] all well-pleaded factual allegations as true, as well as any reasonable inference drawn from them." *Johnson*, 534 F.3d at 1122.

The Court finds the factual allegations have been adequately plead and are sufficiently detailed to provide notice to Defendant and Midland Credit as to the claims against them, including the class claims. Plaintiff alleges that Defendants misrepresented the amounts owed by Citibank cardholders like Plaintiff and later misrepresented the debt forgiveness amounts in 1099-C's issued to debtors upon resolution of underlying debt collection actions. The allegations in the proposed second amended complaint do not differ materially from those asserted in the first amended complaint or in the initial complaint. Plaintiff simply seeks to expand the same factual assertions applicable to his situation to individuals similarly situated. Defendant has not moved to dismiss the first amended complaint on the grounds of factual deficiency under Rule 8 or Rule 12(b)(6). Defendant has therefore not carried its burden to demonstrate how the facts as pled in the

proposed second amended complaint fail to state class claims under the FDCPA and under state law for abuse of process on behalf of those similarly situated to Plaintiff.

Turning to the second argument, the Court finds that it is not appropriate to address the adequacy of the class descriptions in the context of a motion to amend asserted under Rule 15. District courts have broad discretion to control the class certification process. *Vinole v. Countrywide Home Loans, Inc*., 571 F.3d 935, 942 (9th Cir. 2009). Often, the pleadings alone will not resolve the question of class certification and some discovery will be warranted. *Id.* "[T]he parties' pleadings alone are often not sufficient to establish whether class certification is proper, and the district court will need to go beyond the pleadings and permit some discovery and/or an evidentiary hearing to determine whether a class may be certified." *Mills v. Foremost Ins. Co*., 511 F.3d 1300, 1309 & n. 14 (11th Cir. 2008).

The cases relied upon by Defendant do not provide authority to the contrary, as they were all decided upon a motion for class certification under Fed. Rule Civ. P. 23(c) or stand for a different proposition. Defendants rely first upon *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974). There, the trial court interpreted Rule 23 to require a preliminary hearing on the merits of the case as part of the determination whether a suit may be maintained as a class action. The Supreme Court of the United States disagreed with the trial court's procedure, finding nothing in the language of Rule 23 gave the court the authority to conduct a preliminary inquiry into the merits of a suit to determine whether it may be maintained as a class action. *Id.* The Supreme Court noted

that the inquiry for the trial court under Rule 23 is whether the requirements of the rule

are met, and nothing within the rule authorized a merits hearing. Accordingly, *Eisen* does

not support Defendant's contention here. Rather, *Eisen* examined the propriety of holding

a preliminary hearing on the merits as part of the class certification process, and

expressly repudiated that procedure. 7AA Arthur R. Miller, Mary Kane, FED. PRAC. &

PROC. Civ. § 1785 (3d ed. 2005).

And the courts in both *Forman v. Data Transfer*, 164 F.R.D. 407 (E.D. Pa. 1995),

and *Metcalf v. Edelman*, 64 F.R.D. 407 (N.D. Ill. 1974), determined the merits of a

motion for class certification under Rule 23, not a motion to amend the complaint under

Rule 15. Defendant is correct that both courts found the class definitions proposed by the

plaintiffs failed because the definitions of the class prompted a legal conclusion. *Forman*,

164 F.R.D. at 403; *Metcalf*, 64 F.R.D. at 409. However, the procedural posture of the two

cases was more advanced, and the motions were decided under Rule 23.

The Court has flexibility in determining the timing of certification, which may

vary depending upon the circumstances of the case. Fed. Rule Civ. P. 23(c)(1)(A) states

that the court must "at an early practicable time…determine by order whether to certify

the action as a class action." The reference to an early practicable time "recognizes that

there may be many valid reasons justifying the deferral of the initial certification

decision," such as the preference to file a summary judgment motion as to the individual

plaintiff or the need for further discovery. FED. PRAC. & PROC. Civ. § 1785.3. However,

"[a]s a practical matter, the court's determination under subdivision (c)(1) usually should

be predicated on more information than the complaint itself affords." *Id. See also Coll. Of Dental Surgeons of Puerto Rico v. Connecticut Gen. Life Ins. Co.*, 585 F.3d 33, 40 (1st Cir. 2009) ("A complaint that contains class-type allegations historically has been assumed to assert a class action before formal class certification."). Class composition, including compliance with Rule 23, is not the issue at the inception of a class action, and satisfaction of Rule 23's requirements is not before the Court at this time—that is a question for the Court at the class certification stage. *See id.,* 585 F.3d at 41-42.

Additionally, the Court has the inherent power to change its decision later. *See* Fed. Rule Civ. P. 23(c)(1)(C) (court orders that grant or deny class certification "may be altered or amended before final judgment."). This includes the ability to alter the class description. Fed. Prac. & Proc. Civ. § 1785.4. Here, it appears from the face of the proposed second amended complaint that there may be others similarly situated to Plaintiff, and that Plaintiff may be able to identify other members of the class or classes he claims to represent.

Because this matter is in early stages of development, the Court finds it would be inappropriate to rule at this time that the case should not proceed as a class action, especially given the opportunity exists to amend the class descriptions at the close of discovery.[9] Should the Court reach the question of certifying a class, and later find that Plaintiff has not or cannot adequately identify a class or classes which he can properly

---

[9] The discovery deadline imposed by the Case Management Order was November 9, 2018. (Dkt. 14.) The motion to amend was filed in advance of the deadline.

represent, the Court may reconsider its preliminary decision to allow the case to proceed as a class action. *Louisiana Ed. Ass'n v. Calcasieu Par. Sch. Bd.*, 76 F.R.D. 629, 631 (W.D. La. 1977).[10]

Plaintiff's motion to amend the complaint will be granted.

## 2.     Motion to Stay and Compel Arbitration

Defendant contends all the proposed claims stated in the Amended Complaint and the proposed second amended complaint are subject to a valid and binding arbitration agreement imposed by Citibank in its cardholder agreement with Plaintiff. According to William Peck, the Document Control Officer and custodian of records, Citibank employed various quality assurance controls regarding welcome letters, card agreements, notices and inserts (including change-in-terms notices) intended to be included in periodic billing statements and other mailings to Citibank cardmembers. Peck Decl. (Dkt. 24-2.) Billing statements were prepared each month with the appropriate notices or inserts included with the statements.

Mr. Peck testifies in his declaration that a review of Plaintiff's account with Citibank, ending in 058, revealed Plaintiff opened a Best Buy Credit Card Account with Citibank on or about May 9, 2011. Mr. Peck next declares that Plaintiff's account was subject to a written card agreement, as amended from time to time, setting forth the

---

[10] The Court notes also that dismissals without leave to amend are improper unless it is beyond doubt that the complaint could not be saved by any amendment. *See Johnson v. CACH, LLC*, No. 1:16-CV-00383-BLW, 2016 WL 7330571, at *2 (D. Idaho Dec. 16, 2016). Here, the Court can conceive of other ways to define the two proposed classes that may resolve Defendant's objection.

applicable terms and conditions for the account. Attached as Exhibit 1 to Mr. Peck's

declaration is a copy of a card agreement that Mr. Peck indicates Citibank mailed to

Plaintiff in connection with the account, bearing a copyright date of 2015. Mr. Peck

further indicates that it was Citibank's regular business practice to send a new card

agreement to customers at the time of the opening of an account, and that Citibank does

not have records of any returned mail for Plaintiff's account.

Defendant acquired the Citibank Best Buy Fresh Flow accounts, which included

Plaintiff's account, through an assignment from Atlantic Credit in February of 2016.

Citibank initially sold these accounts to Atlantic Credit in April of 2014 pursuant to a

purchase and sale agreement. According to the terms of the parties' April 2014 Purchase

and Sale Agreement, Citibank sold "all right, title and interest of [Citibank] in and to the

Accounts," defined as Citibank's "accounts and receivables charged off prior to the

applicable Closing Date" and referred to as the Best Buy Fresh Flow accounts. Citibank

agreed also that it would transfer all "right title and interest in and to the Accounts and

Buyer will assume, with respect to each Account, all of [Citibank's] rights,

responsibilities, and obligations that arise as a result of Buyer's purchase of the

Accounts." In February of 2016, Atlantic thereafter assigned to Midland Funding, LLC,

"all of Assignor's right, title and interest" in the April 2014 Purchase and Sale Agreement

to Defendant. (Dkt. 41-1 at 3.)

Separately, and as part of the same transaction, Citibank executed a Bill of Sale

and Assignment dated July 26, 2016, wherein Citibank sold "all rights, title and interest

in the Accounts to Midland Funding LLC" under the attached Bill of Sale and Affidavit of Sale of Account. (Dkt. 24-2 at 14.) The Bill of Sale and Assignment indicates Citibank agreed to "transfer, sell, assign, convey, grant, bargain, set over and deliver to Midland Funding LLC," the "Accounts described in Exhibit 1 and the final electronic file." Exhibit 1 to the Bill of Sale and Assignment reflects that the "Best Buy Fresh Flow" accounts were transferred and delivered by Citibank to Midland Funding, LLC. And finally, the Affidavit of Sale reflects that Citibank "sold a pool of charged-off accounts…by a Forward Flow Purchase and Sale Agreement and a Bill of Sale to Midland Funding LLC," and that as part of the sale, "certain electronic records were transferred on individual accounts" to Midland Funding LLC.

The 2015 Best Buy Credit Card Agreement in the record (Dkt. 24-2) contains an arbitration clause, prefaced by language in all capital letters, which states in relevant part:

> THIS SECTION PROVIDES THAT DISPUTES MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, HAVE A JURY TRIAL OR INITIATE OR PARTICIPATE IN A CLASS ACTION….

Following the prefatory language, the Agreement explains what constitutes "covered claims" under the Agreement:

> You or we may arbitrate any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship (called "Claims")….Except as stated below, all Claims are subject to arbitration…This also includes Claims made by or against anyone connected with us or you or claiming through us or you.

(Dkt. 24-2 at 8.) The Agreement contains also an exception to the arbitration clause, which states:

> Claims brought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis. The arbitrator has no authority to arbitrate any claim on a class or representative basis…If arbitration is chosen by any party, neither you nor we may pursue a Claim as part of a class action or other representative action.

(Dkt. 24-2 at 9.)

The arbitration provision further contains an anti-waiver clause, specifying that "[a]rbitration may be requested at any time, even where there is a pending lawsuit, unless a trial has begun, or a final judgment entered. Neither you nor we waive the right to arbitrate by filing or serving a complaint, answer, counterclaim, motion, or discovery in a court lawsuit." And finally, the cardmember agreement provides that "[Citibank] may assign any or all of our rights and obligations under this Agreement to a third party."

Defendant asserts that, because this lawsuit arises out of or relates to Plaintiff's account with Citibank, the arbitration clause contained in the 2015 Card Agreement applies and should be enforced by the Court under the Federal Arbitration Act, 9 U.S.C. §§ 2-4.

Plaintiff submitted an affidavit admitting he opened a credit card account with Best Buy in 2011, but indicating that he does not recall receiving a card agreement in the mail, and he does not recognize the card agreement attached to Mr. Peck's declaration and referenced above. Further, Plaintiff testifies that he did not initiate or authorize any

purchases on his Best Buy account between January 1, 2015, and when the account was charged off. (Dkt. 34.)

However, in the Amended Complaint and proposed amended complaint, Plaintiff acknowledges Defendant owned a debt incurred by Plaintiff with Citibank in the amount of $1,074.80, which Citibank charged off in July of 2016. The Amended Complaint references an "original agreement" between Citibank and Plaintiff, quoting a provision pertaining to "Collection Costs." Plaintiff attaches a refund letter dated March 29, 2017, that he received from "Best Buy," referencing his account ending in 058, which he claims originated from Citibank. (Dkt. 4-1.) The letter informed Plaintiff he was due a refund of $88.11 in collection costs charged in error.

### A.    *Applicable Law*

Enforcement of an arbitration clause is governed by the Federal Arbitration Act. 9 U.S. C. §§ 1, *et seq*. The Federal Arbitration Act states,

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The Supreme Court of the United States has noted that the purpose of the FAA is "to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). The Supreme Court held in *ATT* that there is a "liberal federal policy

favoring arbitration" and a "fundamental principle that arbitration is a matter of contract." *Id*. at 339 (internal citations omitted). The Supreme Court requires that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Id*. (*quoted in Johnson*, 2016 WL 7330571 at *3).

The Court's role under the FAA is limited to determining: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4). The party seeking to compel arbitration has the burden of proving each requirement. *Ashbey v. Archstone Prop. Mgmt., Inc*., 785 F.3d 1320, 1323 (9th Cir. 2015). If the Court answers yes to each of the above questions, the FAA requires that the Court enforce the arbitration agreement in accordance with its terms. *Chiron Corp*., 207 F.3d at 1130.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). State contract law controls whether the parties have agreed to arbitrate. *Knutson v. Sirius XM Radio Inc*., 771 F.3d 559, 565 (9th Cir 2014). There must be a meeting of the minds to form a contract evidenced by a manifestation of intent to contract which takes the form of an offer and acceptance. *Rouse v. Household Fin. Corp*., 156 P.3d 569, 571 (Idaho 2007). Whether there is a meeting of the minds is a factual question. *Mendes Bros. Dairy v. Farmers Nat'l Bank*, 725 P.2d 535, 537 (Idaho Ct. App. 1986). *See also P.O. Ventures, Inc. v.*

*Loucks Family Irrevocable Trust*, 159 P. 2d 870 (Idaho 2007) ("Formation of a contract is generally a question of fact fort the trier of fact to resolve."). If there are "any doubts" concerning the scope of arbitrability, a court should resolve the dispute in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 626 (1985).

**B.**     ***Validity of the Agreement to Arbitrate***

Plaintiff disputes that there is a valid agreement to arbitrate, and alternatively argues that, if there was one, Midland waived its right to arbitrate by suing Plaintiff in state court for recovery of the debt. Plaintiff makes four arguments attacking the validity of the card agreement—and by implication the arbitration provision—Defendant asserts applies here: (1) that there is no evidence of Plaintiff's acceptance of the terms of the card agreement; (2) the agreement does not apply to Plaintiff's account; (3) Midland Funding was not assigned the right to enforce the agreement, only the right to collect a debt; and (4) that Mr. Peck's assertion that Plaintiff's account is subject to an arbitration agreement is a legal conclusion.

*i.  Acceptance of the 2015 Card Agreement*

Plaintiff contends he does not recall receiving a card agreement in the mail in 2011, and consequently there is no evidence that a valid agreement between Plaintiff and Defendant exists. Even assuming he received such a mailing and acknowledging that proof of a cardholder's use of a card is sufficient to prove the existence of an agreement, Plaintiff argues there is no evidence he used the Best Buy credit card either after opening

it, or after January 2015, to incur the debt at issue. *See Funderburke v. Midland Funding, LLC*, No. 12-2221-JAR/DJW, 2013 WL 394198 *5 (D. Kan. Feb. 1, 2013) ("Evidence of a cardholder's use of the card is sufficient to prove the existence of an agreement."). Plaintiff contends the lack of evidence showing he personally assented to the 2015 Card Agreement by use of the card is fatal to Defendant's claim.

Defendant argues that Plaintiff's claim under the FDCPA presupposes a valid agreement for a credit card, citing to paragraphs 9, 11, 13, 14-17, 27, 30, 36, 44-45, 48-49, 51, 53-55, and 57 in Plaintiff's Amended Complaint. (Dkt. 4.) These paragraphs acknowledge that Plaintiff had a contractual relationship with Citibank, incurred a debt primarily for personal, family, or household purposes, and reference a letter he received from Citibank/Best Buy regarding a refund for collection costs for the same account referenced by Mr. Peck – the Best Buy Account ending in 058.

Plaintiff advances a hypertechnical argument in response to Defendant's failure to submit evidence of use of the credit card Citibank purportedly issued to Plaintiff. Evidence in the record establishes Plaintiff was the account holder for a Best Buy credit card account ending in 058 issued by Citibank. And, Citibank's records custodian declares Citibank mailed a copy of the 2015 Card Agreement to Plaintiff, and that Citibank's records reveal Plaintiff's credit card account with Citibank ending in 058 was sold to Defendant for collection purposes. Plaintiff claims Defendant wrongly included the $88.11 in the $1,074.80 Defendant sought in the state court collection action arising out of Plaintiff's use of the credit card. Based upon these assertions, Plaintiff has not

plausibly denied that he had a contractual relationship with Citibank arising out of the use of his Best Buy credit card.

As for Plaintiff's claim that Defendant must show use after 2015, which is the copyright date on the 2015 Card Agreement, the plain language of the 2015 Card Agreement does not require use after that date to bind cardholders. The 2015 Card Agreement notified Plaintiff that the Card Agreement "is your contract with us." It required no affirmative act of assent to its terms by use of the card. The 2015 Card Agreement states also that Citibank could change the terms of the agreement from time to time and that the agreement was binding unless the cardholder closed his account within 30 days after receiving the card and had not used or authorized use of the card. However, even if the cardholder closed the account without using the card, thereby terminating the agreement, by its terms the arbitration provision was severable from the other applicable provisions of the agreement, and would survive termination of the account, unless the arbitration clause was rejected in writing.

Plaintiff does not assert that he cancelled his Best Buy credit account ending in 058 at any time or rejected the arbitration clause; nor does he refute that Citibank mailed the 2015 Card Agreement to him. *See Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 961 (9th Cir. 2001) ("The mailbox rule provides that the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time."). Based upon the evidence in the record, the Court concludes Plaintiff received the 2015 Card Agreement and did not reject its terms,

and therefore accepted the account's terms and conditions, including the arbitration provision. However, this conclusion does not end the Court's inquiry.

### ii. *Assignment*

Next, Plaintiff argues Defendant has not provided evidence establishing that it acquired the right to arbitrate under the 2015 Card Agreement's arbitration provision – only that Defendant acquired the right to enforce a debt. At the time the briefing was submitted, and the Court conducted the hearing, a copy of the 2014 Purchase and Sale Agreement whereby Defendant acquired Citibank's charged off accounts was not part of the record. Plaintiff argues that review of the terms of the 2014 Purchase and Sale Agreement is necessary to determine what rights Citibank and its assignee, Atlantic, sold to Defendant. The Court agrees, given that the 2016 Bill of Sale and Assignment from Citibank to Defendant indicated that the sale of the Best Buy Fresh Flow accounts was subject to the terms and conditions of the 2014 Purchase and Sale Agreement.

Now that the 2014 Purchase and Sale Agreement is in the record, the Court has reviewed its terms together with the terms of the 2015 Card Agreement and the February 2016 Assignment and Release between Defendant, Atlantic, and Citibank. As explained below, the Court finds Defendant did not acquire the right to enforce the arbitration provision in the 2015 Card Agreement.

Defendant purchased Atlantic's rights as they existed in 2014, and therefore Defendant does not have the right to enforce the arbitration clause in the 2015 Card Agreement issued by Citibank to Plaintiff. Starting with the 2016 Assignment and

Release, effective February 19, 2016, Defendant acquired Atlantic's "right, title, and interest in and to [the 2014 Purchase and Sale Agreement]…pursuant to Section 12.5" of the agreement. Section 12.5 of the 2014 Purchase and Sale Agreement prohibited either Citibank or Atlantic from assigning "this Agreement or any of its rights in this Agreement without the other's prior written consent…." In turn, Citibank executed a Bill of Sale and Assignment dated July 26, 2016, agreeing to "transfer, sell, assign, convey, grant, bargain, set over and deliver to [Midland Funding LLC], and to [Midland Funding LLC's] successors and assigns, the Accounts described in Exhibit 1 and the final electronic file" "subject to the terms and conditions of the Purchase and Sale Agreement dated April 30, 2014." The accounts transferred from Citibank to Defendant were described as the Best Buy Fresh Flow Accounts, with a cut-off date of July 4, 2016.

The terms of the 2014 Purchase and Sale Agreement between Citibank and Atlantic indicated the buyer purchased Citibank's "right title and interest of Bank in and to the Accounts." Accounts in turn are defined as Citibank's "accounts and receivables charged off prior to the applicable Closing Date…." Upon the closing date, Citibank agreed to transfer "a data file listing the Accounts," and to transfer "all Bank's right, title and interest in and to the Accounts and Buyer will assume, with respect to each account, all of Bank's rights, responsibilities, and obligations that arise as a result of Buyer's purchase of the Accounts."

While the remaining documents indicate Defendant received records pertaining to Plaintiff's Best Buy credit card account ending in 058 as part of the pool of charged off

accounts sold, it is not clear whether these records included the 2015 Card Agreement.

Rather, the Affidavit of Sale executed by Citibank in July of 2016 indicates "certain electronic records were transferred on individual accounts to the debt buyer," while Mr. Peck's declaration indicated Citibank mailed the 2015 Card Agreement to Plaintiff. "The general rule is that an assignee steps into the shoes of the assignor upon assignment of the interest and takes the assignment subject to the defenses assertable against the assignor." *Travelers Indem. Co. of Am. v. Kendrick Bros. Roofing,* No. 1:10-CV-00604-BLW, 2013 WL 6681240, at *2 (D. Idaho Dec. 18, 2013) (quoting 6A C.J.S. Assignments § 132). Here, this means Defendant stepped into Atlantic's shoes, not Citibank's, and the sale in 2016 was subject to the terms of the 2014 Purchase and Sale Agreement, which was executed prior to the issuance by Citibank of the 2015 Card Agreement. Defendant has not provided the Court with any card agreement in existence prior to April 30, 2014.[11]

Next, the 2015 Card Agreement issued by Citibank to Plaintiff does not appear to contemplate that purchasers of the accounts or Citibank's assigns are entitled to compel arbitration. The arbitration provision indicates that "you" or "we," defined as Citibank, may arbitrate claims arising out of "our relationship." The Agreement extends the arbitration provision to "Claims made by or against anyone connected with us,…such as…employee, agent, representative or an affiliated/parent/subsidiary company." Defendant has no such relationship with Citibank or with Plaintiff, and it stretches the

---

[11] Even if there was a prior agreement containing an arbitration clause, for the reasons explained later in this memorandum, the dispute likely would not fall within the scope of the arbitration provision. Further, the terms of the 2015 Card Agreement would supplant any previous card agreement.

language of the agreement to argue that Defendant has a relationship with Plaintiff arising from the 2015 Card Agreement. At the time Citibank mailed the 2015 Card Agreement to Plaintiff, Citibank had already assigned certain rights to Atlantic via the 2014 Purchase and Sale Agreement. Citibank certainly knew it had executed the assignment in 2014. Yet, the language of the 2015 Card Agreement, which was mailed directly by Citibank to Plaintiff, does not contemplate that Citibank's assigns, or prior or future purchasers of its accounts such as Atlantic and Defendant, would be entitled to invoke the arbitration provision in the 2015 Card Agreement.

The Court contrasts the language of the 2015 Card Agreement's arbitration provision with the language in the arbitration provision the Court examined in *Johnson v. CACH, LLC*, No. 1:16-cv-383-BLW, 2016 WL 7330571 at *3 (D. Idaho Dec. 16, 2016). There, the Court found that the debt purchaser, who was assigned the right to collect a debt, acquired also the right to enforce the terms of the arbitration provision. In that case, however, the arbitration provision defined "we" and "us" as the bank's "parent, subsidiaries, affiliates, licenses, predecessors, successors, assigns, and any purchaser of your account, and all of their officers, directors, employees, agents and assigns or any and all of them." *Johnson* 2016 WL 7330571, at *3.

In contrast here, the arbitration clause in the 2015 Card Agreement does not extend to Citibank's predecessors, successors, assigns, or purchasers of its accounts, nor does it extend further to secondary purchasers, such as Defendant here, who acquired its rights through an assignment from Atlantic. *See also Mason v. Midland Funding, LLC*,

No. 1:16-CV-02867-LMM-RGV, 2018 WL 3702462, at *16 (N.D. Ga. May 25, 2018) (finding defendant was entitled to enforce the arbitration provision in the card agreement when the language defined "we," "us," and "our" as including "any assignees of any of [Bank's] rights, any merchant from which you purchased goods or services using your Account, as well their respective affiliates, servicers, employees, agents, and further assigns.").

Under the unambiguous language of the 2014 Purchase and Sale Agreement, construed together with the 2015 Card Agreement and the 2016 Bill of Sale and Assignment, Defendant did not acquire the right to arbitrate the issues presented in the instant case. The Court therefore finds it unnecessary to consider Plaintiff's other arguments concerning waiver or his objection to Mr. Peck's declaration.

Further, even if Defendant had acquired the right under the 2015 Card Agreement to compel arbitration, the Court finds the arbitration clause does not encompass the disputes at issue here, as explained below.

### C.    Whether the Agreement Encompasses the Dispute

Defendant argues that Plaintiff's individual claims and proposed class claims "arise out of Plaintiff's relationship related to the 2015 Card Agreement and fall within the arbitration clause." Although Plaintiff did not directly address the second prong of the Court's inquiry, the Court must address whether Defendant carried its burden, as the issue of arbitrability is for the Court to decide unless the parties stipulate or clearly provide otherwise in their agreement. *AT&T Tech., Inc. v. Communications Workers of*

*Am.*, 475 U.S. 643, 648-49 (1986) (holding that the "question of arbitrability…is undeniably an issue for judicial determination."); *Walkwell Int'l, Inc. v. DJO Global, Inc.*, No. 1:17-cv-00270-EJL-REB, 2017 WL 5490840, at *4 (D. Idaho Nov. 15, 2017).[12]

The Court finds the present dispute does not fall within the terms of the arbitration clause. Although broadly worded, covered claims subject to arbitration are limited to claims "arising out of or related to your account…or our relationship…." The claims alleged in this case are not a dispute concerning Plaintiff's account. Rather, this is a dispute regarding Defendant's debt collection practices. Defendant asserts it acquired the right to collect money from Plaintiff through its purchase of charged off accounts from Atlantic, who in turn had purchased the accounts from Citibank. Plaintiff alleges Defendant improperly collected debt protection fees and related finance charges that were the subject of a consent order between Citibank and the Consumer Finance Protection Bureau, and then, upon settling the collection action, wrongfully reported the amount of debt forgiven. Plaintiff's FDCPA claims and abuse of process claim involve the Midland Defendants' debt collection practices.

While the Court acknowledges Defendant would not have had a basis to file its collection action had Plaintiff not had an account with Citibank, the dispute here does not specifically arise out of or relate to Plaintiff's account. Plaintiff has not denied the debt

---

[12] Although Plaintiff did not directly challenge Defendant's contention that the arbitration provision in the 2015 Cardholder Agreement encompasses Plaintiff's claims, Plaintiff did not concede the issue.

existed for purposes of this action, and objects instead to Defendant's alleged knowing misrepresentation of the amount owed and the amount reportedly forgiven.

Moreover, as explained above, Citibank issued the 2015 Card Agreement directly to Plaintiff in 2015. The language of the arbitration clause limited its applicability to claims arising out of "our relationship," and did not extend to Citibank's predecessors, assigns, or future assigns.

## CONCLUSION

Defendant, as the one seeking to compel arbitration, has not established that it acquired the right to demand arbitration pursuant to the 2015 Card Agreement, which was issued by Citibank to Plaintiff in the intervening period between the 2014 sale of the charged off accounts to Atlantic and the later 2016 sale of the same accounts subject to the terms of the 2014 agreement to Defendant. Nothing contained within the 2016 sale documents indicated Defendant acquired anything more than what Atlantic purchased in 2014. Further, upon issuance of the 2015 Card Agreement, Citibank did not include its predecessors, or its assigns within the ambit of the arbitration provision in the 2015 Card Agreement. Even if Citibank had included language extending the right to compel arbitration to its assigns or future assigns, the arbitration clause does not encompass the dispute at issue, which concerns Defendant's debt collection practices and not the account itself.

For the reasons explained herein, the Court will deny Defendant's motion to compel arbitration, and will grant Plaintiff's motion to amend the complaint. In addition, the Court will deny Defendant's motion for protective order in its entirety.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Plaintiff's Motion to Amend Complaint (Dkt. 17) is **GRANTED**.

2) Defendant's Motion to Compel Arbitration (Dkt. 24) is **DENIED**.

3) Defendant's Motion for Protective Order (Dkt. 33) is **DENIED**.

4) The Court will issue a separate notice setting this matter for a telephonic status conference to establish new case management deadlines. The parties are directed to meet and confer in advance of the same.

DATED: December 10, 2018

Honorable Candy W. Dale
United States Magistrate Judge